Pittsburgh Plate Glass Company, Transferee v. Commissioner.
Pittsburgh Plate Glass Co. v. Commissioner
Docket No. 781-64.
United States Tax Court
T.C. Memo 1965-159; 1965 Tax Ct. Memo LEXIS 170; 24 T.C.M. (CCH) 847; T.C.M. (RIA) 65159; June 16, 1965
Sidney B. Gambill, 747 Union Trust Bldg., Pittsburgh, Pa., Ernest D. Dell and Charles R. Pascoe, for the petitioner. Gerald Backer, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined that the petitioner is liable as transferee for deficiencies in income tax of Columbia-Southern Chemical Company of $10,881.96 for 1957, $68,682.15 for 1958 and $86,964.05 for 1959. The petitioner admits transferee liability for whatever deficiencies are due. The errors alleged and relied upon are that the Commissioner erred in disallowing $20,926.84 for 1957, $132,081.06 for 1958 *171 and $167,238.56 for 1959 of the deductions claimed for depreciation by Columbia-Southern Chemical Company, hereafter sometimes referred to as Columbia-Southern. Findings of Fact The petitioner is a Pennsylvania corporation, originally incorporated in 1883. Columbia-Southern Chemical Company was a wholly-owned subsidiary of the petitioner from April 1951 through the tax years. The petitioner commenced construction of a cement plant in Zanesville, Ohio in 1923. It began to produce cement in July 1924. The petitioner sold and transferred the Zanesville plant to Columbia-Southern in 1957 and received from the purchaser the full consideration of $14,172,643.06 for the property. That amount was a fair price for the property sold. The petitioner reported its correct gain from the sale as a long-term capital gain and the Commissioner made no change in respect thereto. Columbia-Southern claimed depreciation on its returns for the taxable years using its cost of the properties as basis. The Commissioner, in determining the transferee liabilities, inter alia, disallowed for 1957, $54,553.53, for 1958 $162,570.87 and for 1960 $198,293.66 of the depreciation claimed on building and machinery *172 and equipment of the Zanesville cement plant. He explained that the disallowances were made "under the provisions of section 167 and/or section 482 of the Internal Revenue Code of 1954." All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioner contends that it sold the Zanesville cement plant to its subsidiary, Columbia-Southern, for a fair price and thereafter the purchaser was entitled to depreciation deductions based upon the cost of the properties to it. The Commissioner makes a number of contentions, all of which have been considered. One relates to the use of "sound value" instead of "fair market value" by the parties to the valuation and transfer of the properties. Whatever difference there may be between fair market and sound value is unimportant in this case. The evidence shows clearly that the amount ultimately agreed upon and paid as purchase price was based upon the appraisal which set forth the appraiser's opinion of "fair market value," used reasonable methods of determining such value, and were not influenced in any way to find a higher or lower value than their opinion of fair market value. *173 The Commissioner, in the notice of transferee liability sent to the petitioner, made no determination that there was a contribution to the capital of Columbia-Southern or that the petitioner did not sell the Zanesville properties to Columbia-Southern. He stated in that notice that "the deduction for the building and machinery and equipment of the Zanesville cement plant is excessive * * * under the provisions of section 167 and/or section 482 of the Internal Revenue Code of 1954," but in his brief he stated he "is no longer contending that section 482 of the Internal Revenue Code of 1954, as stated in the statutory notice of liability, has application herein." His contention herein is perhaps best shown by his request for findings of "ultimate facts" as follows: The transfer of the assets * * * of petitioner's cement division to Columbia-Southern constituted a contribution to the capital of that corporation. In the alternative, should the transaction be deemed a sale, for tax purposes the fair market value of the depreciable assets acquired from petitioner was $7,853.069. The record in this case does not support either of those *174 proposed findings. The decision here need not depend upon which party has the burden of proof as to either proposed finding, for not only did the Commissioner fail to prove that the transfer was a contribution to capital and not a sale but the record as a whole justifies findings that there was a sale and no contribution to capital. The evidence presented shows that the purchaser employed a reputable appraisal company to determine the fair market value of the existing properties to be transferred, that company made a thorough examination of those properties and gave a detailed report to the purchaser showing its method and conclusion as to the fair market value of the properties. The best evidence in this record of the fair market value of the properties in question is that appraisal. The purchaser actually paid the full purchase price of $14,172,643.06 to the seller for the whole property. The transaction was a sale for income tax purposes, despite the fact that the seller owned all of the stock of the purchaser and the sales price far exceeded the seller's bases for some of the properties included in the sale. The seller reported $9,267,854.05, the correct amount of its gain, from *175 the sale of the property, as a long-term capital gain and the Commissioner did not make any change in its tax with respect thereto. The parties disagree as to the bases for depreciation of buildings, machinery and equipment, but not as to the rates applicable thereto. The Court concludes that the Commissioner erred to the extent alleged herein by the petitioner. Decision will be entered under Rule 50.